IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION


| | | |
|---|---|---|
| SAMUEL LOMBEH ALLEN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-02846-D |
| | § | |
| AMAZON.COM SERVICES LLC, | § | |
| Defendant. | § | |
| | § | |


PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND


## I. INTRODUCTION


1.  Plaintiff Samuel Lombeh Allen ("Plaintiff" or "Allen") brings claims for disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"); race discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981; interference and retaliation under the Family and Medical Leave Act ("FMLA"); and negligence under Texas law.

2.  Consistent with the Court's November 3, 2025 Order, this Second Amended Complaint adds comparator specifics, essential-function and accommodation facts, and a non-temporal causal chain for retaliation, and omits any claims lacking a private right of action, in order to properly state claims on which relief can be granted and to survive Amazon's Rule 12(b)(6) motion and its request for a stay.

## II. JURISDICTION AND VENUE

3.  This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the ADA, Title VII, § 1981, and the FMLA. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over related negligence claims arising from the same nucleus of operative fact.

4.  Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred at Amazon's FTW6 facility in Dallas County/Coppell, Texas, and Defendant transacts business in this District.

## III. PARTIES

5.  Plaintiff Samuel Lombeh Allen is an individual with a disability (including blindness and a work-related leg injury) and a former employee of Amazon FTW6 who resides in Dallas County, Texas.

6.  Defendant Amazon.com Services LLC is a Delaware limited liability company doing

business in Texas and operating the FTW6 fulfillment center where Plaintiff

worked. It may be served through its registered agent or through counsel of record

in this case.

## IV. ADMINISTRATIVE EXHAUSTION AND EQUITABLE TOLLING

### (TITLE VII / ADA / TCHRA)

7.    Plaintiff diligently pursued administrative remedies to the extent medically possible.

8.    On or about August 3, 2023, Plaintiff experienced a severe medical crisis, due to a brain malfunction/seizure. after the January 16,2023, incident related to

his workplace injury. The brain malfunction resulting in emergency hospitalization and life-support

treatment. Significant neurological and mobility complications continued through

approximately October 2024. During this period, Plaintiff was incapacitated and

unable to prepare or file an administrative charge.

9.    Immediately upon regaining some level of recovery, on or about November 8, 2024,

Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and

the Texas Workforce Commission Civil Rights Division and attempted to file a

charge. He was informed that the time to file a charge had expired.

10.    These facts warrant equitable tolling of administrative deadlines. Alternatively, if a

Right-to-Sue has issued, this action is timely filed within 90 days of Plaintiff's

receipt, and he will supplement the record with that notice.

V. FACTUAL ALLEGATIONS

A.   Disability, Employment Role, and Essential Functions

11.   Plaintiff is a former employee of Amazon with a documented disability under the ADA. He worked at Amazon's FTW6 fulfillment center from approximately June 2021 through August 2023 as a Warehouse Associate / "Problem Solver" in the chain of the FTW6 Operations Manager (including the Area Manager responsible for Plaintiff's shift).

12.   The essential functions of Plaintiff's Problem Solver assignment during the relevant period included: (a) scanning and stowing inventory using a handheld scanner; (b) shelving and moving totes within pedestrian aisles; (c) basic data entry on scanners; (d) training and onboarding new employees; and (e) safe pedestrian travel through marked walkways. Operating powered industrial trucks ("PIT") was not an essential function of Plaintiff's assignment.

B.   Injury and Amazon's Notice of a Recurring Hazard

13.   Amazon managers and Safety personnel had actual or constructive notice of recurring obstructions at the same blind-corner pedestrian turn based on prior complaints and routine traffic patterns.

14.   On January 16, 2023, Plaintiff's right leg struck a heavy steel object left in that blind pedestrian turn, which was unmarked and unconed.

15.  Before and after the incident, Plaintiff repeatedly reported recurring obstructions at the same blind path to supervisors (including Edmond, Iven, Eric, and Iesa), HR, Safety, Disability & Leave Services ("DLS"), and the Learning team, via in-person complaints and ticketed communications (to be identified by number in discovery and introduced as Exhibit 1). The hazard and congestion were known and foreseeable.

16.  The January 16 collision caused acute leg injury and mobility limitations, as shown in photos, emails, and medical records (Exhibits 2, 3, and 4).

C.  Disability, Notice, and Reasonable Accommodations

17.  Immediately after the injury, Plaintiff requested medical evaluation and a light-duty or easy-task reassignment while awaiting a referral for treatment.

18.  On March 2, 2023, Plaintiff was sent to a clinic but was not fully treated and was instructed to return to work despite ongoing swelling and pain that limited standing and walking.

19.  Plaintiff is a qualified individual with a disability under the ADA and TCHRA, substantially limiting major life activities such as walking, standing, and working. Amazon was aware of Plaintiff's disability and need for accommodations as early as March 2021, when Plaintiff reported his condition and requested workplace adjustments.

20.   before and after the injury, Plaintiff requested reasonable accommodations including:
(a) placing cones or

barriers or promptly removing equipment obstructing the blind-path walkway; (b)

applying high-visibility tape or signage at the blind pedestrian navigation pathway;

(c) rerouting Plaintiff away from a congested PIT corridor; (d) allowing short rest

breaks during acute pain episodes; and (e) continuing to assign Plaintiff to

scan/stow tasks that did not require PIT operation.

21.   With these accommodations, Plaintiff could perform each essential function of his

position: scan/stow at a fixed station; brief breaks that do not eliminate an essential

function; and rerouted pedestrian travel that leaves core duties unchanged and

imposes negligible cost on Amazon.

22.   Amazon failed to implement or materially delayed these accommodations despite

knowledge of Plaintiff's disability and the hazard.

D.   Protected Activity and Adverse Actions

23.   Plaintiff's accommodation requests and safety complaints were protected activity

under the ADA and TCHRA and provided notice of a serious health condition under

the FMLA.

24.   During the approximate 45-day period after his injury, managers told Plaintiff that

"Amazon paperwork" was required, and the appointment will take two to three weeks,
before he can be sent to a specific recommended

clinic designated by Amazon. No light duty was approved; Plaintiff continued his

regular tasks, working well over 40 hours per week on his injured leg until he

visited the doctor and was later terminated. Amazon's delay is documented in referral correspondence (Exhibit 5).

25.   Within weeks of Plaintiff's March–April 2023 requests, management deviated from policy by issuing heightened attendance points and write-ups for minor incidents that, on information and belief, did not result in discipline for similarly situated non-Black associates under the same supervisor and manager.

26.   Amazon terminated Plaintiff's employment on August 3, 2023.

E.   Comparator Specificity (Title VII and § 1981 Disparate Treatment)

27.   Plaintiff is a member of protected classes based on disability, race, and gender as a Black African-American male.

28.   Comparator 1 – "A.A." (a non-Black, female Problem Solver associate at FTW6) suffered a knee injury and, under the same Operations Manager and supervisor, was promptly approved for light duty and accommodation within 24–48 hours in or about December 2022. She was stationed away from PIT lanes, given medical leave, and attendance points were suspended during recovery.

29.   Comparator 2 – A non-Black Problem Solver associate who suffered a seizure during a December 2022 event at FTW6 received immediate medical leave and continued employment under the same management structure.

30.   Comparator 3 – A non-Black female associate who required pregnancy-related

accommodations in or about march 8, 2023 was granted short rest breaks, temporary stationing away from hazardous duties, and no points for time adjustments, as well as medical leave.

31.   These associates had the same job title (Problem Solver), similar functions, and worked on the same or similar shifts under the same supervisor and manager, but received more favorable treatment than Plaintiff, a Black African-American injured employee with a disability.

32.   Plaintiff, an injured, blind, Black African-American male associate who could not stand comfortably on his swollen leg, requested the same types of accommodations, including cones/barriers, signage, rerouting from the hazard, rest breaks, medical leave, and continued scan/stow duties without PIT. Amazon delayed or denied his requests, assessed points, and later terminated him.

F.   FMLA Eligibility and Notice

33.   Amazon is a covered employer under the FMLA, employing far more than 50 employees within 75 miles of FTW6.

34.   In the 12 months preceding March 2, 2023, Plaintiff worked at FTW6 approximately 60 hours per week, for a total of well over 1,820 hours. He therefore met the FMLA's 1,250-hour requirement, and the 50-employee requirement was satisfied.

35.   On March 8, April 12, May 10, June 6, and July 25, 2023, Plaintiff explicitly

requested FMLA designation or provided sufficient information to put Amazon on notice of a serious health condition. Instead of providing required FMLA notices and protections, Amazon deducted paid and vacation time and counted those absences toward discipline.

### VI. CAUSES OF ACTION

**Count 1 — ADA / TCHRA: Failure to Accommodate**

36.    Plaintiff incorporates paragraphs 1–35 as if fully set forth herein.

37.    Plaintiff is a qualified individual with a disability who could perform the essential functions of his Problem Solver position with the reasonable accommodations described in paragraphs 19–21.

38.    Amazon failed to reasonably accommodate Plaintiff by refusing or unreasonably delaying feasible measures (including measures provided to non-Black comparators), in violation of 42 U.S.C. § 12112(b)(5) and TCHRA § 21.128.

39.    As a result, Plaintiff suffered lost pay, emotional distress, and other damages.

**Count 2 — ADA / TCHRA: Disability Discrimination (Disparate Treatment)**

40.    Plaintiff incorporates paragraphs 1–39.

41. Amazon adversely acted against Plaintiff—including discipline and termination—because of his disability and his requests for accommodation. Decision-makers disregarded his disability rights, while treating non-disabled or less-disabled employees more favorably in similar circumstances, as described in paragraphs 27–32.

42. Amazon's conduct constitutes disability discrimination in violation of the ADA and TCHRA.

Count 3 — ADA / TCHRA: Retaliation

43. Plaintiff incorporates paragraphs 1–42.

44. Plaintiff engaged in protected activity by seeking accommodations, complaining about denial of accommodations, and reporting safety hazards and the conduct of Safety, DLS, HR, and supervisors who knew of his complaints.

45. After Plaintiff asserted his disability-accommodation rights and complained about hazards and Amazon's failures, Amazon issued heightened points, ignored policy safeguards, and terminated him.

46. Causation is shown by decision-maker knowledge, policy deviations, comparative leniency for others, and a pattern of antagonism preceding termination. These facts support retaliation independent of mere timing. Amazon's actions violate the

anti-retaliation provisions of the ADA and TCHRA.

Count 4 — Title VII and 42 U.S.C. § 1981: Race Discrimination (Disparate Treatment)

47.   Plaintiff incorporates paragraphs 1–46.

48.   Plaintiff is a member of a protected class as a Black African-American male. Under
the same supervisors, non-Black female Problem Solvers and other non-Black
associates (including those identified in paragraphs 28–30) received accommodations
and leniency that Plaintiff requested but was denied—same supervisor, same role,
similar incidents.

49.   The disparate treatment was because of race (and, in part, gender), violating Title
VII and § 1981.

Count 5 — ADA / Title VII / TCHRA: Hostile Work Environment

50.   Plaintiff incorporates paragraphs 1–49.

51.   From approximately spring 2021 through August 2023, supervisors and coworkers
repeatedly left heavy equipment and totes in the same blind-corner walkway after
Plaintiff's complaints about obstacles abandoned in the path.

52.   The assisting supervisor, coworkers, and at least one manager made demeaning

remarks mocking Plaintiff's disability and race, including around February 2022, April 2022, June, July, August, September, November, and December 15, 2022: "this black guy is blind"; "you're not supposed to be here"; "the blind guy keeps making special demands"; "who are you to tell us to walk on the other side of the line"; "the blind guy complains too much; you're not our manager"; and "I'm not responsible for empty totes because I didn't put them there."

53. The abandonment of equipment was frequent—after one or two hours, during break time, after breaks, and at the start of shifts—several times weekly over many months.

54. For over two years, Amazon's FTW6 Safety Team, lead managers, supervisors, HR, Learning, and DLS failed to remediate or properly investigate Plaintiff's complaints.

55. The frequency, duration, and interference with work (missed rate, forced detours, increased pain and anxiety) made the environment severe or pervasive, altering the conditions of employment in violation of the ADA, Title VII, and TCHRA.

Count 6 — FMLA: Interference

56. Plaintiff incorporates paragraphs 1–55.

57. Amazon is a covered employer under the FMLA, employed at least 50 employees within 75 miles, and Plaintiff was eligible (well over 1,250 hours in the prior 12 months). Plaintiff gave adequate notice of a serious health condition and requested

FMLA-qualifying leave as alleged in paragraphs 18 and 33–35.

58.   Amazon failed to designate FMLA leave, withheld required FMLA notices, and counted protected absences toward discipline, thereby interfering with Plaintiff's FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

Count 7 — FMLA: Retaliation

59.   Plaintiff incorporates paragraphs 1–58.

60.   After Plaintiff's FMLA-qualifying notices and requests, Amazon escalated discipline and terminated him. The temporal sequence, policy deviations, and comparator leniency support a plausible causal chain.

61.   Amazon's actions constitute FMLA retaliation in violation of 29 U.S.C. § 2615(a)(2).

Count 8 — Negligence (Texas Law)

62.   Plaintiff incorporates paragraphs 1–16 and 33–35.

63.   Amazon owed a duty to maintain safe pedestrian aisles and to warn of or remove known hazards.

64.    Amazon breached that duty by allowing a heavy steel object to obstruct a blind-path corridor on January 16, 2023 without cones, tape, or signage, and by failing to correct recurring obstructions despite repeated notice.

65.    The hazard proximately caused Plaintiff's injury and resulting damages, including medical costs, pain, and lost earnings and earning capacity.

VII.    DAMAGES AND 2025 DAMAGES CALCULATION METHOD
(UPDATED THROUGH APRIL 2026)

66.    Plaintiff re-alleges and incorporates paragraphs 1–65 as if fully set forth herein.

67.    As of April 2026, Plaintiff seeks recovery of economic, non-economic, punitive, and statutory damages arising from his work-related injury, disability discrimination, retaliation, and wrongful termination from Amazon's FTW6 facility. The following damages calculation method provides a good-faith breakdown of the categories and approximate amounts at issue, subject to refinement in discovery and at trial.

I.    ECONOMIC DAMAGES (SPECIALS)

A.    Past Lost Wages (with Overtime Premium)

68.    Plaintiff's base hourly rate was $20.00 per hour. He regularly worked approximately 60 hours per week (including 20 overtime hours beyond 40), 4 weeks

per month.

69. For purposes of this calculation, the past wage-loss period is 37 months—from March 2, 2023 (first medical-leave request/clinic visit) through April 2026 (current calculation date), including the period after Plaintiff's termination on August 3, 2023.

70. Step 1 — Base straight-time for all hours:

   • 60 hours/week × $20.00/hour = $1,200.00 per week

   • $1,200.00 per week × 4 weeks/month = $4,800.00 per month

   • $4,800.00 per month × 37 months = $177,600.00

71. Step 2 — Overtime premium add-on (for the 20 overtime hours beyond 40):

   • Overtime premium = $10.00/hour (1.5 × $20.00 − $20.00)

   • 20 overtime hours/week × $10.00/hour = $200.00 per week

   • $200.00 per week × 4 weeks/month = $800.00 per month

   • $800.00 per month × 37 months = $29,600.00

72. Past lost wages (with overtime premium) are therefore estimated at: $177,600.00 + $29,600.00 = $207,200.00.

B.  Medical Expenses (Illustrative)

73. Plaintiff has incurred medical expenses related to his work injury, including clinic visits, diagnostic imaging, medications, and physical therapy.

74. By way of example, Plaintiff pleads:

- Past medical expenses:    $50,000.00

- Future medical expenses:   $25,000.00

subject to exact proof through medical bills, provider records, and expert testimony.

C.    Lost Employment Benefits

75. As a result of termination, Plaintiff lost employment-related benefits, including health insurance, retirement contributions, and other fringe benefits.

76. For pleading purposes, Plaintiff estimates lost benefits at approximately 20% of past wages:

- 20% × $207,200.00 = $41,440.00.

D.    Economic Subtotal

77. Plaintiff's current good-faith estimate of economic damages (lost wages, medical expenses, and lost benefits), using the updated 37-month period, is:

- Past wages (with OT)     $207,200.00

- Past medical            $ 50,000.00

- Future medical           $ 25,000.00

- Lost benefits           $ 41,440.00

        -----------

ECONOMIC SUBTOTAL        $323,640.00

II.   NON-ECONOMIC DAMAGES — MULTIPLIER METHOD 1.5 AND SPECIFIC FIGURES

78.   Non-economic damages compensate for intangible harm such as physical pain, mental anguish, emotional distress, and loss of enjoyment of life.

79.   Using the multiplier-method cross-check:
   • Base specials (economic subtotal) = $323,640.00
   • Multiplier = 1.5

   Non-economic damages (pain, suffering, mental anguish, loss of enjoyment) are therefore estimated at:
   $323,640.00 × 1.5 = $485,460.00.

80.   In addition, Plaintiff separately pleads specific non-economic figures reflecting the severity and duration of harm:
   • Pain and Suffering: at least $100,000,000.00
   • Emotional Distress: at least $ 50,000,000.00
   • Loss of Enjoyment of Life: at least $   550,000.00

   subject to statutory caps (where applicable), due-process limits, and the jury's determination.

III.   PUNITIVE / EXEMPLARY DAMAGES

81.  Amazon's conduct was willful, malicious, and carried out with reckless indifference to Plaintiff's federally protected rights under the ADA, Title VII, § 1981, the FMLA, and Texas law.

82.  To punish and deter such misconduct, Plaintiff seeks punitive and exemplary damages in an amount not less than $500,000.00 in this Complaint, and up to $100,000,000.00 in total punitive/exemplary relief across his federal and state claims, subject to any applicable statutory caps, due-process limitations, and the Court's and jury's determinations.

## IV.  FMLA LIQUIDATED DAMAGES

83.  For the portion of back pay attributable to Amazon's FMLA violations, Plaintiff seeks liquidated damages equal to that amount (unless Amazon proves good faith and reasonable grounds), as allowed by 29 U.S.C. § 2617. By way of illustration, if $50,000.00 of the wage loss is awarded under the FMLA, Plaintiff would seek an additional $50,000.00 in FMLA liquidated damages.

## V.  ATTORNEY'S FEES AND COSTS

84.  Certain claims (including under the FMLA, ADA, Title VII, and § 1981) allow prevailing plaintiffs to recover reasonable attorney's fees and costs. Although Plaintiff is currently pro se, he reserves the right to retain counsel and seek recovery

of reasonable attorney's fees and taxable costs.

85.   For pleading purposes, Plaintiff alleges an illustrative figure of at least $20,000.00 in recoverable fees and costs, subject to adjustment based on actual invoices and statutory fee-shifting.

VI.   WORKING TOTALS (PRE-CAP ILLUSTRATION)

86.   For illustration only, and without limiting his claims for higher amounts where permitted, Plaintiff's working total using the above numbers is approximately:

- Economic subtotal:          $ 323,640.00
- Non-economic (1.5×):        $ 485,460.00
- Punitive/exemplary (ask):   $1,000,000.00
- FMLA liquidated (example):  $ 50,000.00
- Fees & costs (example):     $ 20,000.00

                    ------------

Pre-Cap Working Total ≈        $1,879,100.00.

87.   In light of the foregoing, and incorporating both the multiplier cross-check and the separate non-economic and punitive figures, Plaintiff presently seeks total damages —including economic, non-economic, punitive, liquidated, and statutory components —in an amount not less than $150,000,000.00, plus such additional amounts as may be proven at trial, subject to all applicable statutory caps and constitutional limits.

VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that, after trial by jury, the Court enter judgment in his favor and against Amazon, and award:

a.  Back pay, front pay, and lost benefits, consistent with the updated 37-month damages calculation method pleaded above;

b.  Liquidated damages under the FMLA;

c.  Compensatory damages for emotional distress, mental anguish, and loss of enjoyment of life under the ADA, Title VII, § 1981, TCHRA, and Texas law;

d.  Punitive and exemplary damages where permitted by statute and law;

e.  Pre-judgment and post-judgment interest at the highest rates allowed by law;

f.  Costs of suit and reasonable attorney's fees if Plaintiff later obtains counsel;

g.  Reinstatement to his former position or front pay in lieu of reinstatement;

h.  Injunctive and declaratory relief requiring Amazon to cease unlawful employment practices, train management and HR personnel, and implement policies that protect employees' FMLA and ADA rights; and

i.   Such other and further relief, at law or in equity, to which Plaintiff may be justly

entitled.


IX. JURY DEMAND


88.   Plaintiff demands trial by jury on all issues so triable.


Respectfully submitted,


Dated: _____, 2026


/s/ Samuel Lombeh Allen

SAMUEL LOMBEH ALLEN

12777 Merit Drive

Dallas, Texas 75251

Telephone: (518) 505-0764

Email: samuelallen5050@outlook.com

Pro Se Plaintiff


VERIFICATION


I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Executed on _____, 2026, at Dallas, Texas.

_____

Samuel Lombeh Allen

CERTIFICATE OF SERVICE

I certify that on this 16_____ day of november_____, 2025, I filed the foregoing Second

Amended Complaint using the Court's CM/ECF system, which will send notice to all counsel

of record, including counsel for Defendant Amazon.com Services LLC.

/s/ Samuel Lombeh Allen

SAMUEL LOMBEH ALLEN